FILED

2020 May-28  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES MCCONICO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:19-cv-1600-GMB |
| | ) | |
| WAL-MART STORES, INC., and | ) | |
| GREEN DOT BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge.  Pending before the court are Defendants' Motions to Dismiss (Docs. 29 & 32), Plaintiff's Motions for Summary Judgment (Docs. 42 & 44), Plaintiff's Motion to Amend Complaint (Doc. 48), Plaintiff's Motion to Amend Plaintiff's Motion for an Order to Warden Mary Cook to Provide McConico Usage of a Typewriter (Doc. 53), and Plaintiff's Motions to Compel (Docs. 54, 55, 56 & 57).  After careful consideration of the parties' submissions, the applicable law, and the record as a whole, the court finds that this case is due to be dismissed.

## I.  JURISDICTION AND VENUE

The court has subject matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or that venue is proper in the Northern District of Alabama.  The court finds adequate

allegations to support both.

## II.  BACKGROUND

Resolving all factual inferences in favor of Plaintiff James McConico, Jr., the nonmovant, the facts are as follows.

Plaintiff James McConico, Jr. sues Defendant Wal-Mart Stores, Inc. ("Walmart") and Defendant Green Dot Bank. Doc. 18.  McConico's claims relate to a debit card program.  The court construes McConico's amended complaint (Doc. 18) as asserting claims for breach of contract, negligence, and fraud.

Walmart and Green Dot Bank entered into a joint enterprise using Walmart's name and marketing network to create a Green Dot Bank debit card. Doc. 18 at 1. The debit card is known as "the Walmart MoneyCard." Doc. 29-2.  In 2017, McConico visited a Walmart website and applied online for a money card. Doc. 42 at 9.  The cardholder agreement for the money card begins by informing customers that the agreement "is between you and Green Dot Bank, the issuer of your Card." Doc. 29-1 at 2.  The agreement also provides the following information:

> [F]ederal law requires all institutions to obtain, verify, and record information that identifies each person who registers a Card.  When you register your Card, we will ask for your name, address, date of birth, Social Security number, phone number and other information that will allow us to identify you.  We may also ask to see your driver's license or other identifying documents. . . . If we are unable to verify your identity, we may choose to permit you to use the Temporary Card until the money on the Temporary Card has been fully spent, but you will not receive a Personalized Card.

Docs. 18 at 2−3 & 32-1 at 3.

When he applied online for the money card, McConico attempted to review this cardholder agreement, but he received an "error has occurred" message and was unable to read the document. Doc. 42 at 10. Nevertheless, he checked the box indicating that he had read and agreed to the cardholder agreement. Doc. 42 at 10. McConico then selected "Get My Card," and the website accepted his request for a money card. Doc. 42 at 10. McConico does not allege that he told Walmart about the error message, or that his inability to read the cardholder agreement affected his decision to request a money card. He ultimately obtained the card. Doc. 42 at 10.

At some point, McConico lost his money card and requested another one. Doc. 18 at 2. McConico received the replacement card, but the defendants could not verify his identity and denied him the use of the card. Doc. 18 at 2. McConico therefore asked that his account be closed and the balance refunded to him. Doc. 18 at 2. A customer service representative told McConico that he could not use the replacement card or remove money from his account unless his identity could be verified. Doc. 18 at 2. The customer service representative insisted that McConico could not use or obtain his money unless he identified himself. Doc. 18 at 2.

McConico claims that Walmart gave him false information to lure him into enrolling in the Walmart Money Card Program. Doc. 18 at 2. Specifically, McConico alleges that Walmart's failure to monitor and supervise the use of its name falsely led him to believe he was doing business with Walmart, not Green Dot Bank. Doc. 18 at 1. He also alleges that Walmart falsely led him to believe that in the event

there was an identification issue with his money card he still would be allowed to spend the funds on his card, close his account and spend the funds, or get a refund for the balance on the card. Doc. 18 at 1.  Defendants "defrauded, misl[ed], and baited [him by] offering their [Walmart] money card without adequately disclosing that they could seize and unlawfully control McConico's money and deny him the right to close his account in the event of financial or identity disputes between McConico and defendants." Doc. 18 at 3.  "Due to [Walmart's] false, misleading advertisement and breach of contract of material facts regarding the securing, use and control his money, McConico [was deprived] of interest, the ability to buy school needs for his grandchildren, and usage of his money in other investments." Doc. 18 at 3.  For these claims, McConico seeks $1,150,000 in damages.

## III.  STANDARD OF REVIEW

Summary judgment[1] is appropriate "if the movant shows that there is no

---

[1] Both Defendants attached exhibits to their motions to dismiss, and Plaintiff has attached exhibits to his response.  Specifically, Defendants attached the cardholder agreement and screen captures of the Walmart website to their motions to dismiss. Docs. 29-1, 29-2, 32-1 & 32-2.  In his responses, McConico attached his affidavit and more screen captures of the Walmart website. Docs. 42 & 44.  Typically, a court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).  Defendants contend that the motion does not have to be converted if the materials are central to a plaintiff's claims and are not in dispute. Docs. 29 at 6 & 32 at 3 (citing *Korman v. Iglesias*, 2019 WL 2537622, at *2 (11th Cir. June 20, 2019)).  Although McConico does not dispute the contents of the cardholder agreement, he does dispute in his affidavit that he read it. Doc. 42 at 10.  Defendants argue that the court should not consider this affidavit because it is an improper attempt to amend the complaint. Doc. 49 at 6.  But Defendants also argue that McConico should not be given another chance to amend his complaint to include the allegations in his affidavit. Doc. 49 at 8.  In light of this dispute, the court will convert the motions to dismiss (Docs. 29 & 32) into motions for summary judgment, and will consider the extrinsic materials filed both by Defendants and McConico.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be

liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## IV.  DISCUSSION

The court construes the amended complaint as asserting claims for breach of contract,[2] negligence, and fraud against Walmart, and claims for breach of contract and fraud against Green Dot Bank.  McConico argues that Walmart was negligent, fraudulent, and in breach of its contract because he was unable to access the cardholder agreement; because Walmart did not ensure that Green Dot Bank complied with the agreement; and because Walmart did not disclose that the money card operated under Green Dot Bank. Docs. 18, 42 & 44.  He argues that Green Dot Bank fraudulently induced him to enroll in the money card program and that it breached the cardholder agreement. Docs. 18 & 42.  The court first will address McConico's breach of contract claims, then his negligence claims, and finally his fraud claims.  Ultimately, the court finds that all claims against Walmart and Green Dot Bank are due to be dismissed.

### A.    Breach of Contract

To demonstrate a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) his performance of that contract, (3) breach of the contract by the other party, and (4) damages. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141,

---

[2] "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Hum., Inc.*, 518 U.S. 415, 427 (1996).  This is a diversity suit, so the court will apply state law to McConico's state-law claims.

1151 (10th Cir. 2013).[3]  "As a general rule, none is liable upon a contract except those who are parties to it." *Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 223 (Ut. Ct. App. 1990).  Generally, a defendant "cannot be liable for any alleged breach of a contract to which [it] was not a party." *Catlin v. Salt Lake City Sch. Dist.*, 2014 WL 4662466, at *8 (D. Utah Sept. 18, 2014).

### 1.    *Breach of Contract Claim Against Walmart*

McConico argues that Walmart was in breach of a contract because it did not ensure that Green Dot complied with the portion of a cardholder agreement allowing McConico to spend the funds on his card even though his identity could not be verified. Docs. 18, 42 & 44.  Of course, this claim can only be successful if Walmart was party to a contract with McConico, which he has failed to demonstrate.  Indeed, his negligence and fraud claims are based on the premise that Walmart fraudulently lead him to believe it was a party to the contract when it was not.  In neither his amended complaint nor his responses to the motions to dismiss does McConico demonstrate or argue that Walmart was ever a party to any contract with him.  And he does not argue that Green Dot Bank acted with the apparent authority to enter into a contract on Walmart's behalf.  Instead, McConico's fraud claims acknowledge that Walmart did not enter into a contract with him.  If Walmart did not enter into a contract with McConico, it cannot have breached a contract with McConico.

---

[3] Walmart argues that Utah law applies to McConico's breach of contract claims pursuant to the terms of the cardholder agreement. *See* Doc. 29-1 at 11.  The court agrees and McConico does not argue otherwise.  Alabama law governs the remaining state-law claims.

Accordingly, the breach of contract claim asserted against Walmart is due to be dismissed. *See Catlin*, 2014 WL 4662466, at *8 (dismissing with prejudice a breach of contract claim where defendant was not party to a contract with plaintiff).

### 2.    *Breach of Contract Claim Against Green Dot Bank*

McConico argues that Green Dot Bank breached the cardholder agreement. Doc. 42 at 3.  This claim fails because the undisputed evidence shows that Green Dot Bank complied with the terms of the cardholder agreement.  McConico has shown that he was party to a contract with Green Dot Bank because he checked a box on a website indicating that he agreed to terms of the cardholder agreement.[4] But he has not shown that Green Dot Bank breached that cardholder agreement. McConico complains that Green Dot Bank refuses to release the funds in his account because of an identity dispute. Doc. 42 at 4.  However, the terms of the cardholder agreement allow Green Dot Bank to take this precise action.  The cardholder agreement provides that Green Dot Bank will seek identifying information after registering a new card (like McConico's replacement card). Doc. 32-1 at 3.  If a

---

[4] The court finds that McConico entered into a binding contract. "Today, virtually every Internet user is familiar with what have become known as clickwrap agreements—agreements formed by requiring a computer user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with a transaction." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) (internal quotation marks and citation omitted).  While few Alabama state courts have addressed clickwrap agreements, Alabama contract law principles support their enforceability.  "Under Alabama law there is no requirement that a contract contain a signature to demonstrate assent; the existence of a contract may be inferred from external and objective manifestations of assent." *Conference Am., Inc. v. Conexant Sys., Inc.*, 508 F. Supp. 2d 1005, 1014 (M.D. Ala. 2007).  By checking a box indicating that he read and agreed to the terms of the cardholder agreement, McConico provided an external and objective manifestation of assent to the contract.

person's identity cannot be verified, it is within Green Dot Bank's discretion to permit or deny use of the funds in the customer's money card account. Doc. 32-1 at 3 ("If we are unable to verify your identity, we may choose to permit you to use the [funds]. . . until the money . . . has been fully spent.").  Thus, Green Dot Bank strictly complied with the contract by attempting to verify McConico's identity, and then refusing to permit him to use the funds when he could not identify himself.  Because Green Dot Bank has not violated the cardholder agreement, it has not breached its contract with McConico, and the breach of contract claim against Green Dot Bank is due to be dismissed. *See Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226 (Utah 2004) (affirming dismissal of breach of contract claims where defendant did not violate any of the duties for which the parties bargained).

## B.   Negligence

### 1.   *Negligence Claim Against Walmart*

Under Alabama law, there are four elements for a claim of negligence: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury. *Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1106 (M.D. Ala. 2005).  McConico alleges that Walmart negligently failed to ensure that Green Dot Bank complied with the agreement regarding his replacement money card. Doc. 18 at 1.  But the law does not recognize negligence claims predicated on a breach of contract. *See Liveoak v. LoanCare, LLC*, 2019 WL 5864139, at *2 (N.D. Ala. Nov. 8, 2019) ("Alabama law does not recognize claims of negligence arising out of breach of contractual

duties."). "[C]ourts sitting in Alabama . . . have consistently concluded that when the duty allegedly breached is the duty created by the contract itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1234 (N.D. Ala. 2019). Thus, when an offending party violates a contractual obligation, the wronged party may bring a breach of contract claim, but not a corresponding negligence claim. Because the law does not recognize negligence claims resulting from a breach of contract, McConico cannot recover on the theory that Walmart was negligent by breaching a contract relating to the money card program. *See Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (holding that a plaintiff cannot maintain a tort action where the alleged negligence consists of the defendant's failure to perform a contractual obligation).

### 2.    *Negligent Misrepresentation Claim Against Walmart*

If McConico is asserting a negligent misrepresentation claim, he must prove (1) that a false representation was made, (2) that it concerned a material fact, (3) that the plaintiff reasonably relied on the false representation, and (4) that actual injury resulted from that reliance. *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1325 (N.D. Ala. 2019). Here, McConico has not demonstrated that Walmart made a false representation. McConico alleges that Walmart provided him false information by failing to inform him that Green Dot was the true contracting party. Doc. 18 at 2. Additionally, McConico alleges that Walmart falsely told him that would be able to

use the funds on his money card despite any identity disputes. Doc. 18 at 3. However, McConico has not provided any evidence to support these claims, and the record evidence belies his assertions.

First, McConico has not presented any evidence demonstrating that Walmart represented to him that it owned and operated the money card.  He does not claim that a Walmart employee told him that Walmart controlled the money card.  He does not point to a notice on the Walmart website demonstrating that Walmart owned and operated the money card.  He does not provide any billing statements indicating that Walmart was in control of the funds on the money card.  He provides no evidence whatsoever to support his belief that Walmart, not Green Dot, was responsible for the issuance of the money card.

Second, McConico has not presented any evidence supporting the assertion that he would be allowed to spend the funds in his account notwithstanding an identity dispute.   Again, he introduces no employee statements, no Walmart advertisements, and no webpages indicating that he would be allowed to use his replacement card without providing identification.  He provides no explanation for why he believed that he would be able to spend the funds in his account in the event of an identification issue.  Of course, McConico may have assumed that Walmart was the card issuer or that he would not have to provide identification, but assumptions by one party are not representations by another.

Next, the undisputed cardholder agreement makes clear that (1) Green Dot is

12

the contracting party and (2) that identification may be required when registering a new card or using a temporary card. Doc. 29-1.  In an attempt to sidestep the terms of the agreement, McConico claims that he was unable to read the cardholder agreement because of a webpage error. Doc. 42 at 10.  Even if McConico encountered an error on the website preventing him from reading the cardholder agreement, this has no bearing on whether Walmart made a false representation. "[T]o the extent that [McConico's] claims are based on representations made by [Walmart] that accurately reflect [the cardholder agreement], plaintiff has not stated a claim for  . . .  negligent misrepresentation because there has been no false representation." *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003).  Supported only by legal conclusions and no proof, McConico's negligent representation claim cannot survive.

**C.     Fraud**

*1.     Fraud Claims*

To show fraud, McConico must demonstrate a false representation concerning a material existing fact, reliance upon that representation, and damage suffered as a result. *See Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d 1286, 1298 (N.D. Ala. 2019).  "A false representation even if made innocently or by mistake operates as a legal fraud if it is a material fact that is acted upon with belief in its truth." *Id.*

McConico asserts that Green Dot Bank and Walmart "baited" him into believing (1) that he was doing business with Walmart and (2) that he would be

allowed to spend the funds in his account if there was an identification issue. Doc. 18 at 1. But, as discussed above, McConico has not demonstrated that Walmart made any representation of the sort. He has not provided any evidence showing that Walmart made a false representation, and the record evidence negates McConico's claims that Walmart lured him into believing that Walmart operated the money card or would permit him to spend the funds in his account without identification. *See* Doc. 29-1. Rather, the cardholder agreement reveals that Walmart did not control the money card, and that identification might be necessary.

The same goes for Green Dot Bank. McConico has not presented any evidence demonstrating that Green Dot Bank made a false representation to him. Instead, the undisputed cardholder agreement shows that Green Dot Bank acted in accordance with any representations it made to McConico. *See* Doc. 32-1.

A false representation is a requisite to proving fraud. *See Marshall Durbin Farms, Inc. v. Landers*, 470 So. 2d 1098, 1101 (Ala. 1985). Without one, McConico's fraud claims are not viable. Because McConico has not shown that Walmart or Green Dot Bank made a false representation to him, he cannot maintain a fraud claim against either defendant.

### 2.   *Fraudulent Suppression Claims*

Any fraudulent suppression claim also fails. "To succeed on a fraudulent suppression claim, a plaintiff must demonstrate: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the

defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his or her injury. *Standifer*, 364 F. Supp. 3d at 1300.  In this context, "the well settled duty-to-read rule . . . states that a plaintiff has a general duty to read the documents received in connection with a particular transaction along with a duty to inquire and investigate." *Alfa Life Ins. Corp. v. Reese*, 185 So. 3d 1091, 1103 (Ala. 2015) (internal quotation marks and citation omitted).  "[A]ny adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction." *Id*.

Here, McConico cannot successfully argue that Walmart or Green Dot Bank concealed material facts when he does not have any evidence of fraudulent concealment and when he did not comply with his duty to investigate the cardholder agreement.  McConico claims that he was never given the opportunity to read the cardholder agreement due to a website malfunction, but he has no proof that the defendants caused the malfunction or were even aware of it.  And certainly McConico did nothing to investigate the cardholder agreement or even to notify Walmart or Green Dot Bank of his inability to read it.  He has not offered any evidence that he asked a Walmart employee or Green Dot Bank or representative about the error, contacted customer support for the money card, or browsed the Walmart website in effort to find the agreement.  Neither Walmart nor Green Dot Bank thwarted any attempt to obtain the agreement after the electronic malfunction,

because McConico made no attempt to obtain the agreement after deciding to move forward with the transaction without first reading it.  Ultimately, McConico did not conduct any investigation at all to discover the terms of the cardholder agreement, and he has not presented any evidence demonstrating that Walmart or Green Dot Bank fraudulently concealed the agreement by an electronic malfunction. McConico cannot maintain a fraudulent suppression claim when he has no proof that the electronic malfunction was purposeful, and when he checked the box affirmatively indicating that he had read and agreed to terms of the cardholder agreement.[5]

To conclude, McConico has not demonstrated that Walmart was party to a contract with him or that Green Dot Bank violated the terms of its contract with him. He has not demonstrated that Walmart or Green Dot Bank made a false representation to him or induced him to act by concealing material information. Accordingly, his breach of contract, negligence, and fraud claims against Walmart and Green Dot Bank are due to be dismissed.

---

[5] A literate person who signs a document without reading it cannot avoid the effect of his signature because he is not informed of the document's contents. *See Banks v. SCI Ala. Funeral Servs., Inc.*, 801 So. 2d 20, 25 (Ala. Civ. App. 2001).  Here, McConico chose to check the box indicating that he had read the cardholder agreement and agreed to the terms of the cardholder agreement, and he then proceeded to select "get my money card." Doc. 42 at 10.  McConico cannot avoid the effect of this choice by now claiming he was not informed of the cardholder agreement's terms.

**D.    McConico's Motions for Summary Judgment**

Pursuant to the Federal Rules of Civil Procedure, motions must state with particularity the grounds for seeking the order and state the relief sought. Fed. R. Civ. P. 7(b)(1)(B)–(C).  Failure to do so prevents "motions" from being motions at all. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). McConico titles each of his responses to Defendants' motions to dismiss as "Plaintiff's Response to Defendant Wal-Mart, Inc. and Green Dot Bank's Motion to Dismiss and Plaintiff's Motion for Summary Judgment." Docs. 42 & 44.  Despite the titles, nowhere in his responses does McConico mention his "motions for summary judgment."  He does not discuss the summary judgment standard, he does not identify the claims for which he seeks summary judgment, and he does not explain why he is entitled to summary judgment.  Furthermore, at the end of his responses, McConico requests that the case be set for a jury trial. Docs. 42 at 6 & 44 at 6.  McConico's failure to state with particularity the grounds for seeking summary judgment renders his motions for summary judgment procedurally deficient. *See* Fed. R. Civ. P. 7(b)(1)(B)–(C).  Accordingly, to the extent they are intended to be motions, McConico's motions for summary judgment (Docs. 42 & 44) are due to be denied.

**E.    Motion to Amend Complaint**

McConico also seeks leave to amend his complaint for a second time. Doc. 48.  "Leave to amend a complaint shall be freely given when justice so requires."

*Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citing Fed. R. Civ. P. 15(a)).

"While a decision whether to grant leave to amend is clearly within the discretion of the district court, a justifying reason must be apparent for denial of a motion to amend." *Id.*   "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S 178, 182 (1962).

The court has reviewed McConico's motion and his proposed second amended complaint. Doc. 48-1.   The court also has reviewed McConico's supplemental response (filed without leave of court) which contains additional amendments to the complaint but is not filed as a motion. Doc. 52.  In his motion to amend, McConico does not provide any explicit justification for filing a second amended complaint. Doc. 48.  Indeed, he does not even explain why he wants to amend his complaint.  And the proposed amended complaint does little more than mirror McConico's arguments in response to the pending motions to dismiss.  It does not provide additional facts to support McConico's claims, the substance of which appear in the first amended complaint.

McConico argues that he should be granted leave to amend because he has not amended his complaint after service on Green Dot Bank and because he has not

had an adequate opportunity to conduct discovery. Doc. 52 at 2.  These arguments are insufficient to justify leave to amend when amendment would be futile. McConico seeks to add claims of negligent supervision and unjust enrichment, but he does not add any new facts to support these claims and the factual content already before the court does not support recovery under the theories of negligent supervision[6] or unjust enrichment.[7]

For these reasons, the court finds that the proposed amended complaint (Doc.

---

[6] McConico's reply does not allege a valid negligent supervision claim.  "Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001). To prove negligent supervision, a plaintiff must demonstrate that the master knew, or in the exercise of ordinary care should have known, that its servant was incompetent. *See Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013).  Though McConico alleges that Walmart failed to supervise Green Dot, he has not shown that Walmart had a duty to supervise Green Dot.  Because he has not demonstrated a master-servant relationship between Green Dot Bank and Walmart, McConico's attempt to allege a negligent supervision claim is futile.

[7] McConico's reply also does not allege a valid unjust enrichment claim.  "The elements of an unjust enrichment claim under Alabama law are that the (1) defendant knowingly accepted or retained a benefit (2) provided by another (3) who has reasonable expectation of compensation." *See Tolbert v. High Noon Prods., LLC*, 2019 WL 127363, at *7 (N.D. Ala. Jan. 8, 2019) (citing *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)).  "The essence of the theor[y] of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Hartford Fire Ins. Co. v. Ala. Pain Ctr., LLC*, 2018 WL 7286500, at *6 (N.D. Ala. Aug. 2, 2018).  Walmart is a retailer authorized to sell money cards but does not control or own the funds in the money card accounts. Doc. 29-1.  Thus, Walmart does not possess the funds in McConico's money card account, and has not been unjustly enriched by those funds.  And while the evidence shows that Green Dot Bank accepted money on McConico's money card, it does not show that Green Dot Bank is improperly holding money that belongs to McConico.  Instead, the evidence demonstrates that Green Dot Bank is holding money pursuant to the terms of the cardholder agreement with McConico. Doc. 42 at 10.  McConico can access those funds by providing identification as required by the cardholder agreement.  Neither his amended complaint (Doc. 18) nor his reply (Doc. 52) demonstrates that the defendants are holding money that in good conscience belongs to him.  And, for the reasons discussed above, McConico also has not shown that the defendants were improperly paid because of mistake or fraud.  Accordingly, his attempt to bring an unjust enrichment claim is futile.

48-1) and McConico's reply (Doc. 52) would not cure any deficiencies in the first amended complaint.  Nowhere in his filings does McConico sufficiently allege or prove that the defendants acted fraudulently in a manner consistent with a breach of contract, negligence, fraud, or unjust enrichment.  While leave to amend must be freely given, it is within the court's discretion to deny leave to amend where amendment would be futile. *See Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1364 (N.D. Ga. 2017) ("Because the Proposed Amended Complaint would require dismissal for the same reasons as the initial Complaint, Plaintiffs' Motion to Amend is denied as futile.").  Finding no sufficient justification to warrant amendment and that amendment would be futile, the court concludes that the motion to amend (Doc. 48) is due to be denied.

**F.     Motion for Access to a Typewriter**

McConico previously filed a Motion for an Order to Warden Mary Cook (Doc. 46) requesting that the court compel Cook to allow him access to a typewriter so that he could comply with court's initial order requiring documents to be typed. Doc. 39.  The court denied that motion and allowed McConico to handwrite his filings. Doc. 51.  His second request for an order requiring Cook to grant him access to a typewriter is moot for the same reason.

**G.     Motions to Compel**

McConico has filed four motions asking the court to compel Defendants to respond to his interrogatories and requests for production. Docs. 54, 55, 56 & 57.

But discovery has been stayed in this case. Doc. 51.  Moreover, for the reasons discussed above, McConico's claims are due to be dismissed.  Accordingly, the court finds that the Motions to Compel (Docs. 54, 55, 56 & 57) are moot.

## V.  CONCLUSION

For these reasons, it is ORDERED as follows:

1.      Walmart Inc.'s Motion to Dismiss (Doc. 29) is GRANTED, and all claims stated against Walmart Inc. are DISMISSED with prejudice;

2.      Green Dot Bank's Motion to Dismiss in Part Plaintiff's Original and Amended Complaints (Doc. 32) is GRANTED, and all claims stated against Green Dot Bank are DISMISSED with prejudice;

3.      Plaintiff's Motion to Amend Complaint (Doc. 48) is DENIED;

4.      Plaintiff's Motion to Amend Plaintiff's Motion for an Order to Warden Mary Cook to Provide McConico Usage of a Typewriter (Doc. 53) is MOOT; and

5.      The Motions to Compel (Docs. 54, 55, 56 & 57) are MOOT.

A final judgment will issue separately.

DONE and ORDERED on May 28, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE